**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GREGORY BRYAN EAMES and PATRICIA EAMES,<br><br>     Plaintiffs,<br><br>     v.<br><br>SIMOS INSOURCING SOLUTIONS, LLC, TRUEBLUE, INC., and WILLIAMS SONOMA, INC.,<br><br>     Defendants / Third-Party Plaintiffs,<br><br>COWAN SYSTEMS, LLC and US FIRE INSURANCE COMPANY,<br><br>     Third-Party Defendants. | Civil Action No. 22-1570 (RK) (JBD)<br><br>**OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon the Motion filed by Cowan Systems, LLC and US Fire Insurance Company (together, "Third-Party Defendants"), seeking to dismiss the Third-Party Complaint against them for lack of subject matter jurisdiction or in the alternative to dismiss or stay litigation of the Third-Party Complaint in light of parallel litigation filed in Maryland state court. (ECF No. 32.) SIMOS Insourcing Solutions, LLC, TrueBlue, Inc., and Williams Sonoma, Inc. (together, "Defendants") filed a brief opposing the Motion, (ECF No. 38), and Third-Party Defendants filed a reply brief, (ECF No. 41). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Third-Party Defendants' Motion is **DENIED**.

## I.   **BACKGROUND** [1]

### A.   PLAINTIFFS' COMPLAINT AGAINST DEFENDANTS

This matter arises from injuries Plaintiff Gregory Eames ("Eames") sustained when cargo that had allegedly been loaded by Defendants fell onto Eames from the tractor trailer during the unloading.

Defendant Williams Sonoma, Inc. ("Williams Sonoma") owned and operated a warehouse/distribution facility in South Brunswick, New Jersey. (Compl. ¶¶ 6, 9.) Defendant SIMOS Insourcing Solutions, LLC ("SIMOS") and TrueBlue, Inc. ("TrueBlue") provided personnel to operate the South Brunswick facility. (*Id.* ¶¶ 7–8.) SIMOS is a wholly-owned subsidiary of TrueBlue. (*Id.* ¶ 12.) Cowan Systems, LLC ("Cowan") is an interstate motor carrier in the business of providing commercial transportation services. (Md. Compl. ¶ 2.)

On August 14, 2020, Cowan delivered an empty trailer to Williams Sonoma's South Brunswick facility. (*Id.* ¶ 22.) Between August 15 and August 20, 2020, Defendants loaded the trailer with goods and sealed it. (Compl. ¶¶ 19, 22–23; Md. Compl. ¶¶ 23–27.) On August 20, 2020 Cowan transported the loaded and sealed trailer from Williams Sonoma's South Brunswick facility and delivered it to Cowan's facility in Baltimore, Maryland. (Md. Compl. ¶ 29.)

Eames was a tractor trailer driver employed by Cowan. (Compl. ¶ 17; Md. Compl. ¶ 30.) On August 21, 2020, Eames hooked a tractor up to the loaded and sealed trailer at Cowan's Baltimore, Maryland facility. (*Id.* ¶ 30.) Neither Eames nor Cowan were involved with loading or

---

[1] The Court draws the facts in this section from three documents. First, the Court cites the operative Complaint in the instant matter, which Defendants initially removed from New Jersey state court on March 21, 2022. (*See* "Compl.", ECF No. 1-1.) Second, the Court cites the Third-Party Complaint Defendants filed on December 16, 2022 in this matter. (*See* "3P Compl.", ECF No. 24.) Finally, the Court cites the complaint filed on December 13, 2022 to initiate the Maryland Action ("Md. Compl.", available as Ex. 1 Third-Party Pls.' Mot., ECF No. 34-1.) Where indicated, the Court also cites exhibits to these complaints and the parties' submissions on the pending Motion.

sealing the trailer, which was solely within Defendants' control. (Compl. ¶¶ 17–24; Md. Compl. ¶¶ 24–26.) Eames drove the trailer from Baltimore, Maryland to Manassas, Virginia for delivery to Williams Sonoma's customer. (Compl. ¶¶ 20, 26; Md. Compl. ¶ 30.) At the Virginia delivery location, Eames opened one of the trailer doors and "an improperly loaded and secured box fell and struck [Eames] causing grievous injury." (Compl. ¶ 28; *see also* Md. Compl. ¶ 27.)

On February 11, 2022, Plaintiffs—Gregory Eames and his wife Patricia—filed suit in the Superior Court of New Jersey, Middlesex County against Defendants. (*See generally* ECF No. 1-1.) Gregory Eames brought a personal injury claim, (*id.* ¶¶ 29–35), and Patricia Eames brought a loss of consortium claim, (*id.* ¶¶ 36–38). On March 21, 2022, Defendants removed the case to this Court. (ECF No. 1.)

### B.   THIRD-PARTY COMPLAINT AND THE MARYLAND ACTION

On December 16, 2022, Defendants filed a Third-Party Complaint against Eames's employer Cowan and US Fire Insurance Company ("US Fire") (together, "Third-Party Defendants"). (ECF No. 24.)

At the time he drove the tractor trailer, Eames was Cowan's employee. (Compl. ¶ 17; 3P Compl. ¶ 9.) Cowan also owned the trailer Eames delivered from Maryland to Virginia. (*Id.*) Eames delivered Cowan's trailer containing Williams Sonoma's cargo pursuant to a 2015 Transportation Agreement (the "Transportation Agreement") between Cowan and Williams Sonoma. ("Transportation Agreement", Ex. C to 3P Compl., ECF No. 24-3; *see also* Md. Compl. ¶ 15.) The Transportation Agreement provides that disputes between the parties were subject to binding arbitration conducted in San Francisco, California. (*Id.* ¶ 14.3.)[2] Under the Transportation

---

[2] The Agreement provides an exception to this mandatory arbitration for "either party [to] join the other party to any action, suit, or proceeding with the respect to which the party seeking joinder is a defendant, if the other party is required to defend, indemnify, and hold harmless such defendant in accordance with the terms of this Agreement." (*Id.* ¶ 14.4.)

Agreement, each party is obligated to "indemnify, defend and hold harmless" the other for "the negligence, misconduct or breach of duty of such party [and] its employees . . . in the performance of this Agreement." (*Id.* ¶ 10.1)

US Fire issued a commercial auto insurance policy (the "Insurance Policy") to Cowan, which provided insurance coverage for the period of January 1, 2020 to January 1, 2021. (3P Compl. ¶ 8; Md. Compl. ¶ 17.) The Insurance Policy provided only excess indemnity coverage, as Cowan was self-insured for bodily injury and property damage liability up to $750,000. (*Id.* ¶¶ 17–18.) According to the Insurance Policy's Certificate of Insurance, SIMOS was a named insured under the Insurance Policy. (Ex. 1 to 3P Compl., ECF No. 24-1 at 3.)

In October and November 2022, Defendants sought for Third-Party Defendants to agree to defend and indemnify Defendants for Plaintiffs' claims. On October 21, 2022, Defendants sent separate letters to Third-Party Defendants officially tendering their claims for defense and indemnification with respect to Plaintiffs' claims. Defendants' letter to US Fire stated Defendants' position that "the omnibus provision of [the Insurance Policy] provides coverage for [Defendants] under [New Jersey's] loading and unloading doctrine for this accident." (Tender Letter, Ex. A to Defs.' Br., ECF No. 38-3 at *39–40 (citing *Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp.*, 119 N.J. 402 (1990)).)[3] The letter concluded by requesting a prompt response and notifying US Fire, or otherwise Defendants would file a third-party complaint in the pending federal case. (*Id.*)

Defendants' letter to Cowan stated Defendants' position that Eames did not comply with proper safety and industry standards while opening the trailer doors (resulting in his injury). (Tender Letter, Ex. A to Defs.' Br., ECF No. 38-3 at *2–3.) The letter contended that the

---

[3] Citations to the record noted by an asterisk indicate citations to the page numbers per the ECF filing, not the underlying document.

Transportation Agreement obligated Cowan to "provide a properly trained and competent driver" and that Cowan "failed to do so." (*Id.*) Therefore, the letter concluded, under the Transportation Agreement, Cowan was required to indemnify Williams Sonoma for the Eames's claims. (*Id.*)[4]

On a call between representatives of Williams Sonoma and Cowan on November 22, 2022, Williams Sonoma again inquired when Cowan would respond to Defendants' tendered claim and notified Cowan that Williams Sonoma was considering bringing suit "in the near future" against Cowan. (Aff. of Justin Robinson ¶¶ 3–5, Ex. B to Defs.' Br., ECF No. 38-4.)

On December 9, 2022, Plaintiffs and Defendants filed stipulation and proposed order for Defendants to file a third-party complaint. (ECF No. 22.) Three days later, on December 12, 2022, the Honorable Judge Lois H. Goodman approved the proposed third-party complaint for filing, which was then filed on December 16, 2023. (ECF Nos. 23, 24.) The Third-Party Complaint repeated Defendants' claims previously made clear to Third-Party Defendants: that the Insurance Policy obligated US Fire to provide a defense and indemnity to Defendants, (3P Compl. ¶ 11), and that the Transportation Agreement obligated Cowan to indemnify Williams Sonoma, (*id.* ¶ 15).

On December 13, 2022—one day after Defendants' Third-Party Complaint was judicially approved for filing—Third-Party Defendants initiated a separate suit in Maryland state court, seeking declaratory relief that they are not obligated to indemnify or defend Defendants (the "Maryland Action"). (*See generally* Md. Compl.) Third-Party Defendants, *i.e.* the plaintiffs in the Maryland Action, named Williams Sonoma, SIMOS, and TrueBlue (Defendants in this federal action) as the defendants in the Maryland Action. The complaint in the Maryland Action mirrors the allegations from Plaintiffs' Complaint: it blames Eames's injuries on Defendants improperly

---

[4] Defendants' letter to Cowan also stated that the Transportation Agreement required Cowan to "procure the proper insurance for the benefit of Williams Sonoma" and that Cowan had tendered its claims to Cowan's insurer US Fire. (*Id.*)

loading the trailer. (*Id.* ¶¶ 22–33.) The Maryland Action complaint acknowledges that Williams Sonoma and SIMOS "have tendered their defense of the Tort Case to Cowan and USFIC under the Agreement and the Policy and have demanded indemnification for the Occurrence under the terms of the Agreement or the Policy." (*Id.* ¶ 37.) The complaint seeks declaratory relief that Cowan is not required to defend, indemnify, or provide insurance coverage for Defendants under the Transportation Agreement, (*Id.* ¶¶ 44–49), and that US Fire is not required to do same under the Insurance Policy, (*Id.* ¶¶ 50–55).

### C.   THIRD-PARTY DEFENDANTS' MOTION TO DISMISS

On February 3, 2023, Third-Party Defendants moved to dismiss the Third-Party Complaint. (ECF No. 32.) Third-Party Defendants filed their moving brief, ("3PDs' Br.", ECF No. 34), Defendants filed an opposition brief, ("Defs.' Br.", ECF No. 38), and Third-Party Defendants filed a reply brief, ("3PDs' Reply Br.", ECF No. 41). In the Maryland Action, Defendants filed a motion to dismiss or, in the alternative, to stay the Maryland Action. This motion appears to be pending.[5]

## II.   <u>LEGAL STANDARD</u>

### A.   SUPPLEMENTAL JURISDICTION

When a federal court has "original jurisdiction" in a civil matter, it may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within

---

[5] On March 3, 2023, Defendants filed a "Motion . . . to Dismiss, or in the Alternative, to Stay" the Maryland Action. On July 19, 2023, plaintiffs in the Maryland Action, i.e. Third-Party Defendants here, filed an Amended Complaint. On August 3, 2023, Defendants again moved to dismiss or in the alternative stay the Maryland Action. Defendants filed a brief in opposition, and Cowan and US Fire filed their reply brief on September 27, 2023. The motion is now presumably fully briefed and pending a decision in the Maryland Action.

The docket sheet for the Maryland Action is publicly available through the Maryland Judiciary's website. *See Cowan Systems, LLC v. Williams Sonoma*, Civil Case No. C-03-CV-22-005012 (Circuit Court for Baltimore County), available at https://casesearch.courts.state.md.us/casesearch/inquiry. The Court takes judicial notice of the docket sheet in the Maryland Action. *See* Fed. R. Evid. 201(b); *see also Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket." (citations omitted)).

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Establishing supplemental jurisdiction over a state claim requires showing three elements: (1) the underlying federal claim has "substance sufficient to confer subject matter jurisdiction on the court"; (2) the state and federal claims "derive from a common nucleus of operative facts"; and (3) the state and federal claims "would ordinarily be expected to be tried in one judicial proceeding." *MCI Telecommc'ns Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995). Section 1367 specifically contemplates a court's exercise of supplemental jurisdiction over third-party complaints. *See* 28 U.S.C. § 1367(a) ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."); *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 519 F. App'x 90, 91 (3d Cir. 2013) (affirming District Court's exercise of supplemental jurisdiction over a third-party complaint under section 1367).

Even if the test under section 1367(a) is otherwise met, if a court's "original jurisdiction" is based on diversity, the court may not exercise supplemental jurisdiction under certain circumstances pursuant to section 1367(b):

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b). The party seeking a court to exercise supplemental jurisdiction over its claims bear the burden of proving jurisdiction. *See Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995).

### B.     *COLORADO RIVER* ABSTENTION

While federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" by Congress, under "considerably more limited" circumstances a federal court may dismiss or stay a pending federal action in light of a parallel state proceeding. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976). "Only the clearest of justifications will warrant dismissal." *Id.* at 819.

Whether a court should stay or dismiss a federal action pursuant to *Colorado River* is a two-part inquiry. *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009). The court must first decide whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues." *Id.* (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005)). If the state and federal proceedings are parallel, the court then evaluates six factors to determine whether "extraordinary circumstances" justify dismissing or staying the federal action:

> (1) [in an in rem case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Id.* at 308 (quoting *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999)). "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818–19.

## III.   **DISCUSSION**

### A.   MOTION TO DISMISS FOR LACK OF JURISDICTION

Third-Party Defendants contend that the Court lacks jurisdiction over the Third-Party Complaint because it cannot exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (3PDs' Br. at 9.) The parties disagree over both the applicability of 28 U.S.C. § 1367(a) and (b). Defendants contend that the Complaint and Third-Party Complaint are sufficiently related that supplemental jurisdiction is proper under section 1367(a). (Defs' Br. at 6–8.) Third-Party Defendants disagree, (3PDs' Reply Br. at 4–6), and further argue that section 1367(b) bars the Court from exercising supplemental jurisdiction over the Third-Party Complaint because Defendants and Third-Party Defendants are not completely diverse, (3PDs' Br. at 9).[6]

### 1.   **Supplemental Jurisdiction under 28 U.S.C. § 1367(a)**

The Court finds that the three elements of *MCI Telecommc'ns Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086 (3d Cir. 1995) are met here and that exercise of supplemental jurisdiction over the claims in the Third-Party Complaint is appropriate.[7]

---

[6] The parties raise other jurisdictional bases the Court need not address. First, Third-Party Defendants argue that the Court lacks diversity jurisdiction under 28 U.S.C. § 1332 because Defendants and Third-Party Defendants are not diverse. (3PDs' Br. at 8.) Defendants agree and do not argue jurisdiction on those grounds. (Defs.' Br. at 6.) Second, the Third-Party Complaint identifies the Declaratory Judgment Act, 28 U.S.C. § 2201, as a separate basis for federal jurisdiction. (3P Compl. ¶ 6.) Third Party Defendants argue that the Declaratory Judgment Act offers a remedy, not an independent jurisdictional basis. (3PDs' Br. at 10.) Defendants do not address the Declaratory Judgment Act in their opposition brief. (*See generally* Defs' Br.) Because the Court finds it can exercise supplemental jurisdiction pursuant to 28 U.S.C. 1367, it need not reach the Declaratory Judgment Act argument.

[7] The Court agrees with Defendants that *MCI Telecommunications* provides the governing standard in the Third Circuit for exercise of supplemental jurisdiction under section 1367(a). On reply, Third-Party Defendants contend that *MCI Telecommunications* only governs supplemental jurisdiction when "the federal court's subject matter jurisdiction is based on *federal question*" jurisdiction. (3PDs' Reply Br. at 5–6 (emphasis added).) Therefore, they posit because the Court here has jurisdiction over the Complaint pursuant to *diversity* jurisdiction, *MCI Telecommunications* is inapposite and cannot be used to exercise supplemental jurisdiction over the Third-Party Complaint's state law claim. (*Id.*) However, *MCI Telecommunications* refers to the underlying "federal claim," and includes no limitation that the federal court must have federal question jurisdiction over the underlying claim. Indeed, the *MCI Telecommunications* test is a distillation of section 1367(a), which by its plain text refers to the Court's

First, the underlying federal claim of the Complaint have "substance sufficient to confer subject matter jurisdiction on the court." *MCI Telecommc'ns*, 71 F.3d at 1102. Third-Party Defendants do not challenge the Court's exercise of diversity jurisdiction over the claims of the underlying Complaint pursuant to 28 U.S.C. § 1332. Thus, there is an underlying "civil action of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a).

Second, the Court must determine "whether there is a 'common nucleus of operative fact' and whether the claims are part of the 'same case or controversy under Article III.'" *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 303 (3d Cir. 1998) (citations omitted); *see also MCI Telecommc'ns*, 71 F.3d at 1102. Section 1367 "does not permit courts to take jurisdiction over tangentially related claims." *Id.* at 303. However, "total congruity between the operative facts of the two cases is unnecessary." *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 105 (3d Cir.1988), *cert. denied*, 489 U.S. 1078 (1989) (citation omitted). Making this determination is "fact-sensitive." *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995). Permitting Courts to exercise supplemental jurisdiction promotes "judicial economy, convenience and fairness to litigants." *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 726 (1966).

Here, the Complaint and Third-Party Complaint are united by a common nucleus of operative fact. Defendants' liability under the Complaint will turn on whether Eames's injuries resulted from Defendant's negligence in loading Cowan's trailer at its New Jersey facility or from Eames's own negligence in unloading the trailer in Virginia. Cowan's liability under the Third-

---

"original jurisdiction." "Original jurisdiction" encompasses a federal court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (noting that "original jurisdiction" may "rest[] upon Congress' statutory grant of 'diversity jurisdiction'"); *see also Cabibbo v. Parsons Inspection & Maint. Corp.*, No. 09-3213, 2009 WL 3074731, at *3 (D.N.J. Sept. 23, 2009) ("A district court has original jurisdiction over a civil action [pursuant to] 28 U.S.C. § 1332 . . . ."). The factual distinction Third-Party Defendants articulate gives way to the plain language of section 1367 or the legal reasoning of *MCI Telecommunications*.

Party Complaint will turn on this same question, as the Transportation Agreement appears to make Cowan's defense and indemnification obligations contingent on whether Williams Sonoma or Cowan's employee was negligent. (*See* Transportation Agreement ¶ 10.1.) US Fire's liability under the Insurance Policy will evidently depend on the same underlying actions—whether the loading and unloading of Cowan's trailer implicated New Jersey's compulsory coverage requirements. While deciding the Third-Party Complaint will certainly also require contract interpretation, this does not change the fact that all claims turn on the same underlying events.

Third, the Court finds that the claims "would ordinarily be expected to be tried in one judicial proceeding." *MCI Telecommc'ns*, 71 F.3d at 1102. Given the common legal questions and factual disputes underlying each complaint, resolving the liability and contractual coverage questions in a single proceeding is both fair to the parties and a prudent exercise of judicial resources. *See id.* at 1102 ("[L]ogic and prudent use of judicial resources dictate that these claims be tried in one judicial proceeding."). Furthermore, one of the relevant contracts—the Transportation Agreement—specifically contemplates being litigated along with Plaintiffs' tort claims, through the provision that allows one party who is the defendant in separate litigation to join the other party based on the latter's alleged obligation "to defend, indemnify, and hold harmless" the former under the Agreement. (Transportation Agreement ¶ 14.4.)

Having determined that supplemental jurisdiction is appropriate under section 1367(a), the Court turns to whether an exception under section 1367(b) applies.

### 2.      Exception to Supplemental Jurisdiction under 28 U.S.C. § 1367(b)

Section 1367(b) restricts section 1367(a)'s grant of supplemental jurisdiction when (1) the Court's underlying original jurisdiction is based on diversity of the parties and (2) the Court is asked to exercise supplemental jurisdiction over "claims *by plaintiffs* against persons made parties

under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure." 28 U.S.C. § 1367(b) (emphasis added).

The parties disagree how to interpret "plaintiffs" as used in this section. Third-Party Defendants contend that it refers to the plaintiffs who initiated the third-party action—*i.e.* Williams Sonoma, SIMOS, and TrueBlue. (3PDs' Br. at 9.) Because the parties agree that there is not complete diversity between Defendants and Third-Party Defendants, (*Id.* at 5; Defs.' Br. at 6), if Third-Party Defendants read the statute correctly, this non-diversity would trigger Section 1367(b). (3PDs' Br. at 9.) Defendants respond that section 1367(b) only applies to claims brought by the original Plaintiffs—*i.e.* Gregory and Patricia Eames—which excludes the claims in the Third-Party Complaint. (Defs.' Br. at 8–10.)

The Third Circuit answered this question in *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230 (3d Cir. 1994). There, a plaintiff insurance carrier sued its insured in in federal court seeking a declaratory judgment disclaiming coverage for a liability the defendant faced. *Id.* at 1234. Subject matter jurisdiction was premised on diversity between the parties and was not challenged. *Id.* The defendant asserted counterclaims against the plaintiff and joined as co-defendants all of its excess insurance carriers, who were not diverse from the original plaintiff. *Id.* at 1234–35. Reading the plain language of section 1367, the Third Circuit held that section 1367(b) "restricts the extension of jurisdiction in diversity cases over 'claims by *plaintiffs* against persons made parties under Rule 14, 19, 20, or 24,' and by its terms would not extend to [a party defendant's] counterclaims." *Id.* at 1238 (emphasis in original) (quoting 28 U.S.C. § 1367(b)). The Third Circuit concluded that "the additional non-diverse counterclaim defendants do not destroy diversity jurisdiction in the [challenged] action because there is complete diversity of citizenship between the originally named parties." *Id.* Thus, the Court agrees that

Defendants have properly read section 1367(b), consistent with Third Circuit precedent. Because the Third-Party Complaint was not brought by Eames, section 1367(b) is not implicated.

On reply, Third-Party Defendants cite *Deluxe Bldg. Sys., Inc. v. Constructamax, Inc.*, 94 F. Supp. 3d 601 (D.N.J. 2013) to argue that section 1367(b) requires the Court to decide "whether a newly added party aligns with the original plaintiff or original defendant, regardless of the party's designation." (3PDs' Br. at 7.) They contend that Defendants here align with Plaintiffs, because "Third-Party Plaintiffs are seeking insurance coverage and recovery for Plaintiffs' damages, just as Plaintiffs seek in the original Complaint." (*Id.*)

However, the cited language from *Deluxe Building* is inapplicable here. In *Deluxe Building*, the Court analyzed the proposed intervenor's party alignment in accordance with the Third Circuit's instruction to "look[] beyond the formal designations of the complaint." *See Deluxe Bldg.*, 94 F. Supp. 3d at 608 (citing *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 161 (3d Cir. 1995)). Both *Deluxe Buildings* and *Development Finance* interpreted a different provision of section 1367(b), which addresses "claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 . . . ." *See Dev. Fin. Corp.*, 54 F.3d at 159–61 (holding that non-diverse putative third-party plaintiff was in fact more closely aligned with existing defendants such that it should be treated as an intervenor-defendant and its claims not barred by section 1367(b)); *Deluxe Bldg.*, 94 F. Supp. 3d at 609 (asserting supplemental jurisdiction over claim by intervenor-defendant but dismissing claims by intervenor-plaintiff).

As the Court explained in *Deluxe Building*, "[t]he evident purpose of the section 1367(b) plaintiff exclusion 'is to prevent a two-step evasion of the requirement of complete diversity of citizenship by a person who, being of the same citizenship as the defendant, waits to sue until a

diverse party with which it is aligned sues the defendant, and then joins the suit as an intervening plaintiff." *Deluxe Bldg.*, 94 F. Supp. 3d at 609 (quoting *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006)). "Other circuits agree with the Third Circuit that 'plaintiff in § 1367(b) refers to the original plaintiff in the action, not to a counter-plaintiff, cross-plaintiff, or third-party plaintiff.' . . . Congress . . . could have specified counter-plaintiffs, cross-claimants and third-party plaintiffs. It did not." *Id.* at 610. Thus, section 1367(b)'s focus is on frustrating the "efforts of a plaintiff to smuggle in claims that the plaintiff would not otherwise be able to interpose." *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 160 (3d Cir. 1995) (quoting David Siegel, Practice Commentary: The 1990 Adoption of § 1367, Codifying 'Supplemental' Jurisdiction, at 833 (1992)). In other words, Courts' concern about a party's "alignment" is implicated when a party can manipulate the section 1367(b)'s application solely to "plaintiffs" through gamesmanship.

Defendants' Third-Party Complaint shows no evidence of evasion or gamesmanship. Defendants did not influence Plaintiffs' decision whether and when to sue. Defendants here did not strategically wait to be sued by Plaintiffs so that they could initiate suit against the non-diverse Third-Party Defendants. Instead, the need for Defendants to file their third-party action did not arise until Defendants were sued themselves. A defendant's claims against a third-party defendant do not implicate these concerns. *See Dev. Fin. Corp.*, 54 F.3d at 160 ("We have twice held that in a diversity action, the district court has jurisdiction over a defendant's counterclaim against non-diverse parties joined as third-party defendants to the counterclaim.").

Therefore, because Defendants are not "plaintiffs" under section 1367(b) for the purposes of the Third-Party Complaint, section 1367(b) does not bar the exercise of supplemental jurisdiction.

### B.   DISMISSAL OR STAY IN LIGHT OF THE MARYLAND ACTION

In their moving brief, Third-Party Defendants sought to dismiss or alternatively stay this case in light of the pending the Maryland Action pursuant to the "first-to-file" doctrine. (3PDs' Br. at 10–13.) Defendants responded that the *Colorado River* abstention doctrine provided the correct standard for Third-Party Defendants' request and that the *Colorado River* doctrine does not require abstention here. (Defs.' Br. at 10–15.) On reply, Third-Party Defendants do not mention the first-to-file doctrine, implicitly conceding that *Colorado River* abstention, rather than the first-to-file rule, governs here. (*See generally* 3PDs' Reply Br.) Third-Party Defendants also contend that, applied here, the *Colorado River* doctrine counsels in favor of abstention. (*Id.* at 8–12.)

### 1.   Proper Test for Parallel State Proceedings

The "first-filed" rule permits a district court to "enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before *another district court*." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (emphasis added). The Third Circuit has consistently held that the first-filed rule is "a comity-based doctrine" triggered "when duplicative lawsuits are filed successively in two different federal courts." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 210 (3d Cir. 2016) (en banc); *see also Spencer Sav. Bank, S.L.A. v. Vasta*, No. 21-20485, 2022 WL 4536279, at *4 (D.N.J. Sept. 28, 2022) (collecting cases for the proposition that "the first-filed rule and its exceptions do not apply between federal and state court actions"). Thus, the first-filed doctrine does not apply here, where the proceeding at issue is before a state court, not a federal district court. As explained above, *see* Section II.B, *supra*, the Court applies the *Colorado River* doctrine when sought to abstain from hearing a case over which it has jurisdiction.

Therefore, in the following section the Court applies the *Colorado River* doctrine to Third-Party Defendants' request to dismiss or stay the Maryland Action.

### 2.      Application of the *Colorado River* Doctrine

The threshold question for determining *Colorado River* abstention is whether the state and federal proceedings are parallel. This is found when proceedings "involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues.'" *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005) (quoting *Timoney v. Upper Merion Twp.*, 66 F. App'x 403, 405 (3d Cir. 2003)). Also relevant is whether the plaintiff in each action seek the same remedies. *See Harris v. Pernsley*, 755 F.2d 338, 346 (3d Cir. 1985).

The Third-Party Complaint and Maryland Complaint are unquestionably parallel. They involve the same parties: Williams Sonoma, SIMOS, and TrueBlue against Cowan and US Fire. Both complaints likewise turn on whether Cowan and US Fire must defend and indemnify Williams Sonoma, SIMOS, and TrueBlue against Eames's claims. The timing of the two complaints—with Third-Party Defendants instituting the Maryland Action one day after the Court approved filing the Third-Party Complaint here—likewise evidences the overlap.

Having concluded that the proceedings are parallel, the Court turns to balancing the six factors to determine whether "extraordinary circumstances" justify dismissing or staying the federal action. *See Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Est. of Shaffer*, 629 F. App'x 348, 350 (3d Cir. 2015) (not precedential) (citing *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308 (3d Cir. 2009)).

The first factor is inapplicable because the case does not involve claims over specific property. *See McMurray v. De Vink*, 27 F. App'x 88, 93 (3d Cir. 2002) (finding first factor irrelevant because no court assumed jurisdiction over property).

The second factor, testing the "inconvenience of the federal forum," does not support abstention. Third-Party Defendants contend that coming to Trenton will be inconvenient for its employees to testify. (3PDs' Br. at 9–10.) However, as noted above, litigation involving the Transportation Agreement appears likely to turn on the questions of negligence by Cowan's employee, Eames, and Defendants, which are already before this Court. The other issues relevant to the Third-Party Complaint will require the Court to interpret the contracts, with likely little involvement by Third-Party Defendants' employees. Third-Party Defendants also have not explained how the distance from Maryland to New Jersey is too prohibitive for its witnesses to make the journey, such that the federal forum is "inconvenient." *See Golden Gate Nat. Sr. Care*, 629 F. App'x at 351 (finding that a trip of seventy miles was not inconvenient); *Burns v. Watler*, 931 F.2d 140, 147 (1st Cir. 1991) (finding that that a two-hour drive was not inconvenient). The Court notes that the journey from Trenton to Baltimore on the Amtrak Northeast Regional line is less than two hours. Northeast Regional, https://www.amtrak.com/tickets/schedule-results.html (last visited Oct. 11, 2023).

In any event, it is likely that "the bulk of the litigation will be conducted via electronic filing and mail service on the parties," and that the "few in-court appearances that the parties may wish to attend pose[] little practical inconvenience—and certainly not one that overcomes the heavy burden required to justify abstention." *Golden Gate Nat. Sr. Care*, 629 F. App'x at 351. While it may well be that the Maryland state court offers Third-Party Defendants a more "convenient forum," (3PDs' Br. at 10–11), this is not the relevant test. *See Beals v. Bank of Am., N.A.*, No. 10-5427, 2011 WL 5415174, at *6 (D.N.J. Nov. 4, 2011) (stating that the second factor asks "not which forum is superior but whether the federal forum is inconvenient"). Therefore, the Court finds that litigating the Third-Party Complaint in this forum is not inconvenient.

The third factor, the desirability of avoiding piecemeal litigation, also does not support abstention here. The question under this factor is not a general test for efficiency but rather whether there is a "strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." *Ryan v. Johnson*, 115 F.3d 193, 198 (3d Cir. 1997) (emphasis in original); *see also Perez v. JP Morgan Chase Bank, N.A.*, No. 14-2279, 2022 WL 4466236, at *5 (D.N.J. Sept. 26, 2022) (finding no "strongly articulated congressional policy" on the third *Colorado River* factor); *Hartford Ins. Co. of the Midwest v. Dana Transp. Inc.*, No. 16-9091, 2018 WL 10152321, at *8 (D.N.J. May 21, 2018) (same). Here, Third-Party Defendants have not articulated any congressional policy that militates in favor of abstention.

Concerns over piecemeal litigation may also be triggered when the parallel state case has progressed to a stage beyond the federal litigation, such that the parties are exposed to inconsistent outcomes. *See Mo v. HSBC Bank USA, Nat'l Ass'n*, No. 20-2529, 2022 WL 53476, at *3 (D.N.J. Jan. 4, 2022) ("[T]he danger of piecemeal litigation certainly exists where . . . extensive proceedings on the claims at issue have already been held in the parallel state case[.]"); *Hartford Ins. Co.*, 2018 WL 10152321, at *8 ("[T]he concern with piecemeal litigation arises primarily where parallel lawsuits pose a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." (quoting 32A Am. Jur. 2d, Federal Courts § 1061 (2018))). A review of the docket from the Maryland Action shows that no discovery has occurred, the Court there has entered no dispositive orders, and the case has not progressed beyond the motion to dismiss stage. In other words, the Maryland Action is in the same litigation posture as litigation of the Third-Party Complaint here. Therefore, the Court finds that permitting prosecution of the Third-Party Complaint would not "throw into turmoil the parties' rights and obligations" such that abstention is appropriate. *St. Clair v. Wertzberger*, 637 F. Supp. 2d 251, 255 (D.N.J. 2009).

The fourth factor, which court obtained jurisdiction first, also does not favor abstention. The Third Circuit instructs that this factor "is not a strict first-past-the-post test." *Golden Gate Nat. Sr. Care*, 629 F. App'x at 351. Instead, the Court considers "both the filing date and the advancement of the litigation in each forum." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983)). The federal court should consider whether, at the time it decides an abstention request, "substantial proceedings . . . ha[ve] taken place" in state court." *Id.* (citing *Moses H. Cone*, 460 U.S. at 21–22); *see also Nationwide*, 571 F.3d at 309 (noting the importance under factor four of the "comparative progress" of the state and federal cases). As noted above, the Maryland Action is in its infancy. Third-Party Defendants offer no suggestion that litigation in Maryland is so far advanced that prudence requires this Court to abstain from exercising jurisdiction.

Third-Party Defendants also contend that the Maryland court was "the first court to establish jurisdiction over the subject matter" in the Maryland Complaint. (3PDs' Reply Br. at 11.) As explained above, that Third-Party Defendants ran to the courthouse steps right before Defendants is not dispositive. In any event, the abstention doctrine should not be employed to reward Third-Party Defendants for managing to file suit in Maryland three days before the Third-Party Complaint was filed in the pending federal action, given the ample notice they had that the Third-Party Complaint was forthcoming. In communications in October and November 2022, Defendants clearly signaled their intent to bring Third-Party Defendants into the federal action if the latter did not accept the Defendants' tendered claims. Defendants had even filed a proposed Third-Party Complaint, which Judge Goodman approved the day before Third-Party Defendants filed suit in Maryland.

The fifth factor, which asks whether the Court will apply state or federal law, does not support abstention. The rationale for this consideration is that "the state court's greater familiarity with its own law supports a district court's decision to step aside out of respect for the state court." *Hartford Ins. Co.*, 2018 WL 10152321, at *8–9 (quoting 32A Am. Jur. 2d, Federal Courts § 1063 (2018)). Third-Party Defendants contend that the relevant issues "involve issues of state law, not federal law," but fail to specify which state's law will apply. (3PDs' Reply Br. at 11.) The claims here will certainly involve application of state law. However, the relevant state law appears to be that of New Jersey, which Maryland courts have no particular advantage over this Court in deciding. *See also Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 386 (D.N.J. 2015) ("State law does control, weighing marginally in favor of abstention, but federal district courts routinely decide breach of contract claims in diversity cases.").

Finally, there is no indication that Maryland will be unable to adequately protect the interests of the parties. "This factor is generally a one-way ratchet, serving only to weigh *against* abstention where a state court is incapable of protecting a party's interests." *Golden Gate*, 629 F. App'x at 352 (emphasis in original) (citing *Moses H. Cone*, 460 U.S. at 26–27); *Ryan v. Johnson*, 115 F.3d 193, 200 (3d Cir. 1997) ("[The sixth] factor is normally relevant only when the state forum is *in*adequate." (emphasis in original)). Defendants contend that the court in Maryland will not be able to exercise personal jurisdiction over SIMOS and therefore cannot protect SIMOS's interests. (Defs.' Br. at 14.) However, as SIMOS is the moving party before the Court, it is unclear how this assertion, even if true, would render the Maryland court incapable of protecting SIMOS's interests, as SIMOS could consent to jurisdiction. Therefore, this factor carries no weight. *See Golden Gate*, 629 F. App'x at 352 ("Here, because we have no indication that the Pennsylvania courts are unable to protect the parties' interests, we attribute no weight to this factor.").

In weighing the six factors, "[n]o one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The balancing must be "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. The Court finds that Third-Party Defendants have not met this high bar for abstention. Therefore, the Court will permit litigation of the Third-Party Complaint to proceed in this federal forum.[8]

---

[8] The Court's decision is based on the limiting briefing and exhibits presented by the parties for the purpose of deciding subject matter jurisdiction and abstention. The parties' briefing asserts generally the interpretation they believe the Court should assign the relevant documents without discussing specific provisions or citing authority for their arguments. Because that issue has not been joined before the Court, the Court does not rule on the law applicable or the correct interpretation of the contracts discussed herein.

IV.   **<u>CONCLUSION</u>**

For the foregoing reasons, Third-Party Defendants' Motion to dismiss the Third-Party Complaint or in the alternative stay prosecution of the Third-Party Complaint is **DENIED**. An appropriate Order accompanies this decision.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: October 12, 2023